UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CONSOLIDATED EQUIPMENT SALES,
INC.,                                                                                                Plaintiff,

v.                                                                Civil Action No. 3:19-cv-467-DJH-RSE

JRF, LLC,                                                                                          Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Consolidated Equipment Sales, Inc. (operating under the assumed name Team Boone) believes that Defendant JRF, LLC damaged a bulldozer that Boone leased to JRF and asserts claims of breach of contract, negligence, and loss of rental opportunity. (Docket No. 1-1) JRF moved for summary judgment on all counts (D.N. 45) and subsequently filed an amended motion for summary judgment. (D.N. 46) JRF also seeks monetary sanctions pursuant to Federal Rule of Civil Procedure 11. (*Id.*) For the reasons explained below, the Court will grant in part JRF's amended motion for summary judgment and deny JRF's request for sanctions.

**I.**

In May 2018, Boone leased two Caterpillar bulldozers to JRF. (D.N. 46-1, PageID # 278; D.N. 52, PageID # 458) These particular bulldozers "rely exclusively on their hydraulic systems to operate," and "[t]he only fluid that should ever be put into the hydraulic system is clean hydraulic fluid." (D.N. 52, PageID # 459) In late May, Ross Fann, a member of JRF, accidentally put diesel fluid (DEF) into the hydraulic tank of one of the bulldozers. (D.N. 46-1, PageID # 279; D.N. 52, PageID # 459) Upon realizing his mistake, Fann contacted Thompson Machinery, a Caterpillar dealer and service provider. (D.N. 46-1, PageID # 279; D.N. 52, PageID # 460) A Thompson representative cleaned the machine in early June; after draining and refilling the

1

hydraulic tank, the representative informed Fann that he could restart normal use of the bulldozer. (D.N. 46-1, PageID # 279; D.N. 52, PageID # 460)

JRF resumed using the bulldozer. (D.N. 46-1, PageID # 280) In mid-July, a Boone representative inspected both bulldozers and drew fluid samples from their tanks. (*Id.*, PageID # 280; D.N. 52, PageID # 460) Boone informed JRF that one of the samples appeared discolored, and JRF told Boone about the bulldozer's exposure to DEF. (*Id.*) JRF then reached out to Thompson for further inspection. (D.N. 46-1, PageID # 281; D.N. 52, PageID # 461) Thompson again serviced the bulldozer and transported it to their own shop. (*Id.*) According to JRF, "Boone notified JRF that it would not accept the Bulldozer back, contending that the machine was a total loss and could not be repaired." (D.N. 46-1, PageID # 281) JRF, meanwhile, claims that "[t]he Bulldozer was properly repaired, is not damaged, and should have been returned to rental circulation by Boone after Thompson completed its servicing of the machine." (*Id.*)

Boone filed this action in state court in May 2019, asserting that "[t]he bulldozer is a total loss" (D.N. 1-1, PageID # 6) and raising claims of breach of contract, negligence, and loss of rental opportunity. (*Id.*, PageID # 6–7) JRF removed the matter to this Court in June 2019. (D.N. 1) JRF moved for summary judgment on all claims (D.N. 45) and filed an amended summary-judgment motion on the same day. (D.N. 46) JRF also seeks sanctions pursuant to Federal Rule of Civil Procedure 11, arguing that Boone has not acted in good faith, withheld discoverable information, and engaged in spoliation of evidence. (*Id.*, PageID # 292–93)

## II.

**A.     Summary Judgment**

Before the Court may grant a motion for summary judgment, it must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The evidence of the nonmoving party is to be believed, *id*. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the nonmoving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the nonmovant to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252. "The Court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment; only the finder of fact can make such determinations." *Doe v. Snyder*, 449 F. Supp. 3d 719, 727 (E.D. Mich. 2020) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014)).

### 1. Breach of Contract

"To prevail on a breach of contract claim, a plaintiff must 1) establish the existence of a contract, 2) prove a breach of that contract, and 3) show damages flowing from the breach." *House v. Players' Dugout, Inc.*, 440 F. Supp. 3d 673, 682 (W.D. Ky. 2020) (citing *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)).[1] JRF asserts that "Boone has failed to demonstrate that JRF breached any contractual duty it may have owed to Boone under the Rental Contract" (D.N. 46-1, PageID # 290), but it does not provide further argument or evidence in support of this contention. As JRF fails to identify the portions of the record demonstrating the absence of a genuine issue as to breach, the Court need not consider this argument further. *See Celotex*, 477 U.S. at 323.

JRF next argues that even if it did breach the contract, "JRF cured the breach by ensuring that Thompson, an authorized CAT dealer and service provider, inspected, serviced, and repaired the machine," and that "Boone has not suffered any damages" because "JRF and/or its insurer covered the expenses invoiced by Thompson relating to the inspection, service, and repair of the Bulldozer." (D.N. 46-1, PageID # 290) Boone responds that the bulldozer was destroyed and that therefore JRF "is contractually required to pay the full replacement list value of the dozer." (D.N. 52, PageID # 470–71) Alternatively, Boone argues that "the flushing procedure performed by [Thompson] is not satisfactory to Team Boone" and that "at a minimum, [JRF] must pay to have the dozer's hydraulic system replaced and pay the lost rent on the unit until those repairs have been completed." (*Id.*, PageID # 471)

---

[1] The parties agree that Kentucky law governs the interpretation of the contact. (D.N. 46-1, PageID # 289; D.N. 52, PageID # 465)

Both parties support their respective positions with expert reports. Marc Cammack, JRF's expert, found that "[t]he flushing of the hydraulic system and inspection of the bulldozer . . . did not find any indications of damage to the hydraulic system"; "the bulldozer checked to specification and was fine to be returned to service"; and "[n]o supporting evidence has been produced to indicate the hydraulic system is destroyed beyond repair." (D.N. 46-5, PageID # 347) Jason Summers, Boone's expert, submitted a contrary conclusion: "[T]he dozer will begin to need intermittent repairs at unpredictable and sporadic intervals," and therefore "the machine is not fit for further use as a rental unit because a repair truck would need to follow the dozer around and it [would] be out of service for indeterminate amounts of time." (D.N. 52-2, PageID # 486)

JRF strenuously objects to Summers's report and qualifications (*see, e.g.*, D.N. 46-1, PageID # 283–86; D.N. 54, PageID # 650–51), pointing out that Cammack "is the only expert disclosed by either party who actually performed an in-person inspection of the Bulldozer" (D.N. 46-1, PageID # 282) and noting that it "anticipates filing a *Daubert* motion to exclude the opinions of [Summers]." (D.N. 54, PageID # 651) But no such motion has yet been filed, and, in any event, the Court "may not make credibility determinations or weigh the evidence" at the summary-judgment stage. *Doe*, 449 F. Supp. 3d at 727 (citing *Laster*, 746 F.3d at 726). Given the conflicting expert evidence before the Court regarding the damage to the bulldozer, JRF has failed to demonstrate the absence of a genuine issue of material fact as to damages.[2] *Celotex*, 477 U.S. at 323. JRF is therefore not entitled to summary judgment on the breach-of-contract claim.

---

[2] JRF also states, in passing, "that Boone speculatively has maintained [the bulldozer] to be a 'total loss.'" (D.N. 46-1, PageID # 290) In its reply brief, JRF argues that Boone's claimed damages are not recoverable because they are speculative. (*See* D.N. 54, PageID # 659–660) As JRF did not properly raise the issue of whether Boone's damages are speculative until its reply brief, the Court does not consider it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument

### 2. Negligence and Loss of Rental Opportunity

JRF argues that Boone's negligence claim is barred by the economic-loss doctrine. (D.N. 46-1, PageID # 291) "[T]he economic loss doctrine 'requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'" *Nami Res. Co., LLC v. Asher Land & Mineral, Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018) (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004)). In other words, "[a] breach of duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie." *Id.* (quoting *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 792 (Ky. 2017)).

Boone responds that it "sued . . . under a theory of tort liability; the exchange of the bulldozer for money created a bailment." (D.N. 52, PageID # 475) But as JRF points out (*see* D.N. 54, PageID # 660), Boone's complaint does not mention bailment. (*See* D.N. 1-1) And a claim for negligence and a claim based on bailment are not the same. *See Underwriters at Lloyd's Under Policy No. LHO 10497 v. Peerless Storage Co.*, 404 F. Supp. 492, 495 (S.D. Ohio 1975), *aff'd*, 561 F.2d 20 (6th Cir. 1977) ("There can be no dispute that this action may not be maintained as a tort action for negligence . . . . [because] [i]t is instead an action premised upon the contract of bailment."). Boone cannot now "assert [a] new claim[] in response to summary judgment." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020). Therefore, since Boone's

---

in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)); *Morrison v. Trulock*, No. 1:19-CV-00004-GNS, 2020 WL 2090525, at *6 (W.D. Ky. Apr. 30, 2020) ("[Movants] cannot raise [an] argument for the first time in their [summary judgment] reply and thereby deprive [non-movants] of a chance to respond.") (citing *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012)).

negligence claim rests entirely on JRF's alleged breach of "contractual duty" (D.N. 1-1, PageID # 6), the economic-loss doctrine bars this claim, and JRF is entitled to summary judgment. *See Nami Res*, 554 S.W.3d at 335.

JRF also argues that "Boone's lost rental opportunity cause of action fails for the same reasons as its breach of contract claim" (D.N. 46-1, PageID # 291), namely because Boone "failed to demonstrate that JRF breached the Rental Contract" and "failed to demonstrate any damages." (*Id.*, PageID # 290) In response, Boone does not address the issue of lost rental income as an independent claim, but rather only as an element of its contractual damages. (*See* D.N. 52, PageID # 472) Moreover, no claim for "loss of rental opportunity" appears to exist under Kentucky law. JRF is therefore entitled to summary judgment on this claim. (D.N. 1-1, PageID # 7) This does not, however, prevent Boone from arguing loss of rental opportunity as an element of damages should it ultimately prevail on its breach-of-contract claim. *See, e.g.*, *Cutter v. Ethicon, Inc.*, No. CV 5:19-443-DCR, 2020 WL 109809, at *10 (E.D. Ky. Jan. 9, 2020) (explaining that while punitive damages are not a separate cause of action they are available as a remedy for another cause of action).

**B.    Sanctions**

JRF moves for sanctions pursuant to Federal Rule of Civil Procedure 11, arguing that "Boone has not acted in good faith and fairly dealt with JRF"; that Boone "withheld discoverable documents and information"; and that Boone "with[held] evidence in some instances . . . [and] engag[ed] in spoliation of evidence in other instances." (D.N. 46-1, PageID # 292–93) Federal Rule of Civil Procedure 11(c) permits sanctions when a party violates Rule 11(b), which prohibits submitting filings for an improper purpose, frivolous filings, and unsupported factual contentions. *See* Fed. R. Civ. P. 11(b)–(c). Importantly, Rule 11(c)(2) requires that motions for sanctions "be

made separately from any other motion," served on the opposing party, and "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* at 11(c)(2). "These provisions are intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997) (quoting Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 Amendments)).

As Boone points out (*see* D.N. 52, PageID # 477), JRF did not follow these procedural safeguards, but instead included its request for Rule 11 sanctions with its motion for summary judgment. (*See* D.N. 46-1) The Court will therefore deny JRF's request for sanctions. *See Ridder*, 109 F.3d at 297 ("[A]dhering to the rule's explicit language and overall structure, we hold that sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court.").

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     JRF's amended motion for summary judgment (D.N. 46) is **GRANTED** as to Counts II and III of Boone's complaint. Those claims are **DISMISSED** with prejudice. The motion is **DENIED** as to Count I.

(2)     JRF's initial motion for summary judgment (D.N. 45) is **DENIED** as moot.

(3)     JRF's request for sanctions is **DENIED** without prejudice.

(4)     This matter is referred to Magistrate Judge Regina S. Edwards for a status conference.

August 10, 2021

David J. Hale, Judge
United States District Court

9